UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| MINNEAPOLIS FIREFIGHTERS' RELIEF ASSOCIATION, on behalf of itself and all others similarly situated,<br><br>  Plaintiff,<br><br> vs.<br><br>MEMC ELECTRONIC MATERIALS, INC., and NABEEL GAREEB,<br><br>  Defendants. | No. 4:08-CV-1411 (CEJ) |
| DONALD JAMESON, individually and on behalf of all others similarly situated,<br><br>  Plaintiff,<br><br> vs.<br><br>MEMC ELECTRONIC MATERIALS, INC., and NABEEL GAREEB,<br><br>  Defendants. | No. 4:08-CV-1570 (TCM) |

**MEMORANDUM AND ORDER**

This matter is before the Court on defendants' motion to dismiss the plaintiff's consolidated amended complaint for failure to comply with the heightened pleading requirements of the Private Securities Litigation Reform Act of 1995 (PSLRA), 15 U.S.C. § 78u-4(b). Plaintiff has filed a response in opposition and the issues are fully briefed.

MEMC Electronic Materials, Inc., (MEMC) is a publicly-traded company that designs, manufactures, and sells silicon wafers for use in semiconductors and solar cells. MEMC manufactures its primary raw material -- polysilicon -- at facilities in Pasadena, Texas and Merano, Italy. On July 23, 2008, MEMC announced that a fire at the Texas plant on June 13, 2008, shut polysilicon production down for a week. In the

same announcement, MEMC stated that there had been a failure on the production line at the Merano plant that reduced polysilicon output for the second quarter by almost five percent.[1]  The company reported that it had missed its second quarter revenue projections by less than two percent.  On July 24, 2008, MEMC's share price fell slightly more than twenty percent.  In September and October 2008, two class-action securities fraud actions were filed in this district against MEMC and its officers.  The Court consolidated the two cases and appointed Mahendra A. Patel as the lead plaintiff.  The purported class consists of all persons who purchased MEMC securities between June 13, 2008, and July 23, 2008 (the "class period").

Plaintiff filed a consolidated amended class complaint on February 23, 2009.  The complaint names as defendants MEMC; its president and chief executive officer, Nabeel Gareeb; and its senior vice president and chief financial officer, Kenneth R. Hannah.  Plaintiff complains that the production events were "material facts" that should have been disclosed when they occurred.  In Count I of the amended complaint, plaintiff alleges that MEMC and the individual defendants violated section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b) and 78(t), and SEC Rule 10b-5, 17 C.F.R. § 240.10b-5.  In Count II, plaintiff alleges that the individual defendants are liable as "controlling persons" within the meaning of section 20(a) of the Securities Exchange Act, 15 U.S.C. § 78t(a).  Defendants move to dismiss the complaint pursuant to Rules 9(b) and 12(b)(6), arguing that the complaint does not comply with the heightened pleading standards of the PSLRA.

I. <u>Legal Standard</u>

---

[1] These two events are referred to variously as the production "disruptions" or "events."

The purpose of a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure is to test the legal sufficiency of the complaint. The factual allegations of a complaint are assumed true and construed in favor of the plaintiff, "even if it strikes a savvy judge that actual proof of those facts is improbable." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556 (2007) citing Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 n.1 (2002); Neitzke v. Williams, 490 U.S. 319, 327 (1989) ("Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations"); Scheuer v. Rhodes, 416 U.S. 232, 236 (1974) (a well-pleaded complaint may proceed even if it appears "that a recovery is very remote and unlikely"). The issue is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to present evidence in support of his claim. Id. A viable complaint must include "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp., 127 S. Ct. at 1974. See also id. at 1969 ("no set of facts" language in Conley v. Gibson, 355 U.S. 41, 45-46 (1957), "has earned its retirement.") "Factual allegations must be enough to raise a right to relief above the speculative level." Id. at 1965.

The heightened pleading rules of the Private Securities Litigation Reform Act (PSLRA) dictate a modified analysis of securities fraud claims. Kushner v. Beverly Enter., Inc., 317 F.3d 820, 824 (8th Cir. 2003). These heightened pleading standards are unique to the PSLRA and were an attempt to restrain abusive securities litigation practices such as pleading by hindsight. In re K-Tel Int'l, Inc. Sec. Litig., 300 F.3d 881, 889 (8th Cir. 2002). The PSLRA requires the courts to "disregard 'catch-all' or 'blanket' assertions that do not live up to the particularity requirements of the statute." Id. Under the Act, plaintiffs must "specify each statement alleged to have been misleading [and] the reason or reasons why the statement is misleading," 15 U.S.C. § 78u-

4(b)(1); and "state with particularity facts giving rise to a strong inference that the defendant acted with the requisite state of mind." § 78u-4(b)(2). The "required state of mind" is an intent to deceive, demonstrated by knowledge of the statement's falsity or reckless disregard of a substantial risk that the statement is false. Higginbotham v. Baxter Int'l, Inc., 495 F.3d 753, 756 (7th Cir. 2007). In determining whether the plaintiff has alleged facts giving rise to the required "strong inference" of scienter,

> a court must consider plausible nonculpable explanations for the defendant's conduct, as well as inferences favoring the plaintiff. . . The inference of scienter must be more than merely "reasonable" or "permissible" -- it must be cogent and compelling, thus strong in the light of other explanations. A complaint will survive . . . only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged.

Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 324 (2007) (alterations in original).

## II. Plaintiff's Allegations

Plaintiff claims that defendants improperly concealed material adverse facts about MEMC's financial well-being, business operations, and prospects. Specifically, plaintiff alleges that defendants committed fraud when they failed to timely disclose (1) that on and before June 13, 2008, MEMC experienced material disruptions in its Texas and Italy facilities; (2) the disruptions prevented MEMC from generating expected revenues; and (3) MEMC's previously issued guidance became lacking in any reasonable basis and required immediate revision. (Cons. Am. Class Comp. ¶¶ 6, 58) [Doc. #41]. The disruptions were disclosed on July 23, 2008.

MEMC produces granular polysilicon at the Pasadena facility and chunk polysilicon at the Merano facility. Id. at ¶33. As of June 29, 2008, MEMC was described as maintaining "very lean production processes and practices," with just

over one week of inventory on hand.[2]  As a result, the company was cash-efficient but vulnerable to losses in production.  Id. at ¶35.  According to plaintiff, defendants were aware that each day of production was important, id. at ¶ 47, and that "investors would find any production problems to be highly material."  Id. at ¶ 54.

On July 23, 2008, MEMC filed a Form 8-K[3] and reported its second quarter results.  Despite increased net sales, the results were below the bottom end of the previously issued guidance.  Defendant Gareeb explained that the company's output was reduced due to the "premature failure of a relatively new heat-exchanger" at the facility in Italy.  The output from the Pasadena, Texas facility had positioned MEMC to exceed the second quarter projections, but a fire at the plant on June 13, 2008, shut down production for a week.  As a result, production from Pasadena was insufficient to completely offset the losses in Italy.  Id. at ¶¶ 62-63.  The company missed the bottom end of its second quarter projections by two percent.  Gareeb explained that the company did not "pre-announce" the incident because it was not felt that the two-percent deviation was material.  Id. at ¶ 68.

Plaintiff alleges that, prior to June 2008, MEMC established a precedent of making prompt disclosures regarding events that might affect production.  In particular, plaintiff cites the following:

---

[2]According to allegations in the complaint, MEMC was in the process of installing additional production units at the Pasadena plant in late 2007 and early 2008.  At the end of the first quarter of 2008, MEMC reported that one new unit had been installed and it was anticipated that installation of a second unit would be completed before the end of the second quarter.  Id. at ¶ 46.

[3]"In addition to filing annual reports on Form 10-K and quarterly reports on Form 10-Q, public companies must report certain material corporate events on a more current basis. Form 8-K is the 'current report' companies must file with the SEC to announce major events that shareholders should know about."  Information from the U.S. Securities and Exchange Commission, http://www.sec.gov/answers/form8k.htm

1. On September 4, 2007, MEMC filed a Form 8-K addressing a production incident at the Pasadena facility that resulted in "an approximate one week impact," causing the company to revise its third quarter guidance downward by approximately five percent. <u>Id.</u> at ¶ 37.

2. On October 25, 2007, MEMC updated the effects of the September incident in a Form 8-K and earnings call. Investors were informed that the incident caused a loss of "well over a week's worth of production," a delay in expansion, and "sequential reduction in gross margin." MEMC also reported that it had recovered from the event and was "targeting to achieve the level of Q4 revenue targeted prior to the . . . incident and be able to recover some of the lost revenue from Q3." <u>Id.</u> at ¶¶ 38-40.

3. On January 24, 2008, MEMC filed a Form 8-K and held an earnings call. It was revealed that equipment maintenance planned for early 2008 had had to be completed in late December 2007. The company experienced a one-day disruption in production and missed its fourth quarter revenue target by $5 million. The company also issued its projections for the first quarter of 2008. <u>Id.</u> at ¶¶ 41-44.

4. On April 3, 2008, MEMC filed a Form 8-K and first quarter update. The company reported that on multiple occasions during the first quarter the company had to perform premature maintenance to address accelerated buildup of chemical deposits at Pasadena facility. Each instance required several days of downtime. The company experienced much lower output and missed the financial targets disclosed on January 24, 2008. <u>Id.</u> at ¶ 45.

5. On April 24, 2008, MEMC filed a Form 8-K with its first quarter results. The company commented on weaker demand from semiconductor customers and

continued strong demand from solar customers. The company also stated that it intended to be "extra cautious" with respect to its second quarter expectations, given the unplanned production issues that occurred in the first quarter. During the first quarter conference call, defendant Gareeb addressed the installation of additional production capacity (Unit 4) at the Pasadena facility, which was anticipated to be complete before the end of the second quarter. Id. at ¶¶ 46-50.

6. Also on April 24, 2008, a gas leak occurred at the Pasadena plant. Eighteen people were sent to area hospitals. Later that day, the company issued a press release stating that the company did not foresee any impact on the financial targets issued earlier in the day. A second press release was issued on April 25, 2008, confirming that production had resumed. Id. at ¶¶ 51-52.[4]

### III. Discussion

Section 10(b) makes it unlawful to "use or employ, in connection with the purchase or sale of any security . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [Securities and Exchange] Commission may prescribe." 15 U.S.C. § 78j(b). The SEC promulgated Rule 10b-5, which makes it unlawful:

(a) To employ any device, scheme, or artifice to defraud,

(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

---

[4]Plaintiff cites a number of statements defendants made after the class period as evidence that their failure to disclose the June 2008 production events is a deviation from their usual pattern. However, statements made after the alleged omission are irrelevant to establishing whether defendants had a duty to make the disclosures before July 23, 2008, and so are not recited here.

> (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b-5. Section 10(b) prohibits only "manipulative or deceptive" acts. In re Charter Comm. Sec. Litig., 443 F.3d 987, 990 (8th Cir. 2006). A device or contrivance is not "deceptive," within the meaning of § 10(b), absent some misstatement or a failure to disclose by one who has a duty to disclose. Id. at 992 (citing Santa Fe Industries, Inc. v. Green, 430 U.S. 462, 474-75 (1977)).[5] "[A]ny defendant who does not make or affirmatively cause to be made a fraudulent misstatement or omission . . . cannot be held liable under § 10(b) or any subpart of Rule 10b-5." Id.

"In a typical § 10(b) private action a plaintiff must prove (1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, 552 U.S. 148, 156-57 (2008) (citing Dura Pharmaceuticals, Inc. v. Broudo, 544 U.S. 336, 341-42 (2005)). Defendants contend that plaintiff has failed to allege facts that (1) demonstrate the existence of an actionable omission; (2) give rise to the required inference of scienter; and (3) demonstrate that defendants' alleged omissions caused plaintiff's loss. Defendants also argue that their earnings projections are protected by the PSLRA's safe harbor and bespeaks caution doctrine. The discussion below will be limited to defendants' first two arguments, which the Court finds are dispositive.

---

[5]"Manipulative," as used in the securities context, is a "term of art" and refers to illegal trading practices such as "wash sales, matched orders, or rigged prices, that are intended to mislead investors by artificially affecting market activity." Id. at 990. This case does not involve allegations of "manipulative" acts.

1. <u>A Material Omission</u>: Plaintiff does not allege that the defendants made a materially false statement; rather, he contends that defendants failed to timely disclose the production incidents at the Texas and Italy plants. "When an allegation of fraud under section 10(b) is based upon a nondisclosure, there can be no fraud absent a duty to speak." <u>Weiner v. Quaker Oats Co.</u>, 129 F.3d 310, 315-16 (3rd Cir. 1997) (quoting <u>Lorenz v. CSX Corp.</u>, 1 F.3d 1406, 1418 (3rd Cir. 1993)); <u>see also</u> <u>Basic Inc. v. Levinson</u>, 485 U.S. 224, 239 n. 17 (1988). ("Silence, absent a duty to disclose, is not misleading under Rule 10b-5.") A duty arises if there have been inaccurate, incomplete or misleading disclosures. <u>In re K-Tel Int'l, Inc. Sec. Litig.</u>, 300 F.3d 881, 898 (8th Cir. 2002) (quoting <u>Sailors v. Northern States Power Co.</u>, 4 F.3d 610, 612 (8th Cir. 1993)). "However, the requirement is not to dump all known information with every public announcement." <u>Id.</u>

Defendants argue that they had no duty to disclose the mere occurrence of the June 2008 production events. Publicly-traded companies are not required to disclose all information as soon as it comes into their possession simply because the information is material to stock prices. <u>Gallagher v. Abbot Labs.</u>, 269 F.3d 806, 808 (7th Cir. 2001). "We do not have a system of continuous disclosure. Instead firms are entitled to keep silent (about good news as well as bad news) unless positive law creates a duty to disclose." <u>Id.</u> See also <u>Higginbotham v. Baxter Int'l, Inc.</u>, 495 F.3d 753, 760-61 (7th Cir. 2007) ("[W]hat rule of law requires 10-Q reports to be updated on a cycle other than quarterly? That's what the 'Q' means.")

Plaintiff argues, first, that defendants had a duty to disclose the disruptions in order to correct prior statements. Defendants released first quarter results in April 2008. At that time, defendants noted that new polysilicon production units would be installed at Pasadena during the second quarter with the goal of increasing production.

The June 13, 2008 fire, combined with the loss from Merano, lowered the overall production below the predicted levels. In general, Section 10(b) and Rule 10b-5 do not impose a duty on defendants to correct prior statements so long as those statements were true when made. Weiner, 129 F.3d at 316. See also K-Tel Int'l, 300 F.3d at 891 ("'Mere allegations that statements in one report should have been made in earlier reports do not make out a claim of securities fraud.'") (quoting Acito v. IMCERA Group, Inc., 47 F.3d 47, 53 (2d Cir. 1995)). However, "[t]here can be no doubt that a duty exists to correct prior statements, if the prior statements were true when made but misleading if left unrevised." Weiner, 129 F.3d at 316 (quoting In re Phillips Petroleum Sec. Litig., 881 F.2d 1236, 1245 (3rd Cir. 1989)) (alteration in original).

"Even where a party does not otherwise have an affirmative duty to disclose certain information, once a material topic has been broached, the party has an affirmative duty to disclose sufficient additional information to prevent the original disclosure from being misleading." In re Xcel Energy, Inc., Securities, Derivatives & ERISA Litig., 286 F. Supp.2d 1047, 1057 (D. Minn. 2003). Plaintiff relies on Xcel to argue that defendants were required to disclose the production events before the end of the quarter in order to correct the prior statements. At issue in Xcel, however, were statements regarding the company's credit risk that were incomplete when made. In this case, plaintiff does not allege that defendants concealed material information when they issued second quarter projections and thus Xcel does not support plaintiff's argument.

Plaintiff next argues that a duty arose from defendants' established "pattern" of disclosing events that affected production. Plaintiff cites no case law to support the contention that such a "pattern" can give rise to a duty. Furthermore, plaintiff describes the "pattern" as affirmative assurances to investors that MEMC had resolved

prior production problems, was taking care to prevent further production problems, and was taking precautions to ensure employee safety. Assuming without deciding that these statements could give rise to an affirmative duty to disclose, plaintiff fails to explain how the occurrence of the production incidents renders defendants' assurances misleading or untrue.

Defendants argue that the two production events were immaterial as a matter of law because MEMC missed its projected revenue by less than two percent. An omission is material if there is "a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the total mix of information made available." Basic Inc., 485 U.S. at 231-32 (quotations and citations omitted). "Alleged misrepresentations may also present or conceal such insignificant data that, in the total mix of information, it simply would not matter to a reasonable investor." Parnes v. Gateway 2000, Inc., 122 F.3d 539, 546-47 (8th Cir. 1997) (overstatement of assets by two percent was immaterial a matter of law). In light of the Court's determination that defendants had no duty to announce the production events at an earlier date, it is unnecessary to determine whether the failure to do so was material.

2. <u>Scienter</u>: Scienter requires a showing of an intent to deceive, demonstrated by knowledge of the statement's falsity or reckless disregard of a substantial risk that the statement is false. Higginbotham, 495 F.3d at 756. Scienter "can be established in three ways: (1) from facts demonstrating a mental state embracing an intent to deceive, manipulate or defraud; (2) from conduct which rises to the level of severe recklessness; or (3) from allegations of motive and opportunity." Elam v. Neidorff, 544 F.3d 921, 928 (8th Cir. 2008) (internal citations omitted). In order to survive a motion to dismiss, plaintiff's allegations must "give rise to a strong

inference of scienter," meaning that the inference "must be more than merely plausible or reasonable -- it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." Id. (quoting Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308 (2007)).

Plaintiff relies on the recklessness standard to establish scienter. Where scienter is based on reckless conduct, "[s]uch sufficient conduct is limited to 'highly unreasonable omissions or misrepresentations' involving 'an extreme departure from the standards of ordinary care, and . . . present[ing] a danger of misleading buyers or sellers which is either known to the defendant or is so obvious that the defendant must have been aware of it.'" In re K-tel Int'l, 300 F.3d at 893-94 (alterations in original) (internal citations omitted). Without a showing of motive and opportunity, the remaining allegations against the defendants must be particularly strong to constitute an inference of recklessness. Id. at 894. "Specifically, unsupported allegations that defendants had motives common to all officers and directors -- such as keeping the stock price high for the general purpose of increasing compensation or the desire to make the corporation appear profitable -- are insufficient to establish scienter." Id. "The desire to make a company seem more profitable is a desire universally held among corporations and their executives . . . and thus is insufficient to establish scienter as a matter of law." In re Cerner Corp. Sec. Litig., 425 F.3d 1079, 1085 (8th Cir. 2005) (citations omitted).

Plaintiff relies on the following allegations to establish that defendants acted recklessly by delaying disclosure of the production events until the end of the second quarter:[6] MEMC experienced a number of production problems before June 2008;

---

[6]Plaintiff relies on allegations based on information from confidential witnesses. Defendants argue that the Court must discount these allegations as inherently subject to competing plausible inferences. The Court need not decide this issue since the

-12-

defendants knew that investors would find future production problems highly material; defendants represented that past production problems were largely resolved; defendant Gareeb closely monitored daily production numbers; and daily production was material to achieving the company's goals. These allegations are simply insufficient to establish that defendants' failure to immediately reveal the June 2008 disruptions was an "unreasonable omission" involving "an extreme departure from the standards of ordinary care," and presenting a known or obvious danger of misleading buyers or sellers. Plaintiff has failed to meet his heightened burden of establishing that any inference from his allegations is "cogent and at least as compelling as any opposing inference of nonfraudulent intent." Elam, 544 F.3d at 928.

Plaintiff's complaint fails to adequately plead the elements of his claim under Section 10(b) and will be dismissed. Plaintiff's "controlling person" claims under Section 20(a) are derivative of his claim under Section 10(b) and they will be dismissed as well. In re Hutchinson Technology, Inc. Sec. Litig., 536 F.3d 952, 961-62 (8th Cir. 2008).

In the final footnote of his memorandum in opposition to defendants' motion to dismiss, plaintiff asks the Court to grant him leave to amend in the event that his complaint is deemed deficient in any fashion. While such leave should be granted freely when justice so requires, Rule 15(a)(2), futility is a valid reason to deny leave. Id. (quoting In re Cerner Corp. Sec. Litig., 425 F.3d 1079, 1086 (8th Cir. 2005)). Plaintiff identifies no additional allegations he could make to cure the deficiencies and the Court believes that no circumstances exist under which plaintiff's essential assertion — that defendants should have disclosed the production events at an earlier date — can support a claim for fraud.

---

allegations based on these witnesses are not sufficient to establish plaintiff's burden.

Accordingly,

**IT IS HEREBY ORDERED** that defendants' motion to dismiss plaintiff's consolidated amended complaint [Doc. #46] is **granted**.

**IT IS FURTHER ORDERED** that defendants' motion for oral argument [Doc. #50] is **denied as moot**.

_____
CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 8th day of March, 2010.